**UNITED STATES DISTRICT COURT**
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 1:21-CR-00236 |
| | : |
| | : |
| V. | : (Judge Wilson) |
| | : |
| AYINDA HARPER | : |
| Defendant | : |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

AND NOW, this 17th day of November 2022, comes the above-named defendant, Ayinda Harper, by and through his attorney, Jonathan R. White, Esquire and DETHLEFS-PYKOSH LAW GROUP LLC, respectfully requests This Honorable Court grant the within Motion and, in support thereof, avers the following:

## I.    ARGUMENT

The Second Amendment to the United States Constitution protects "the right of the people to keep and bear Arms." U.S. Const. amend. II. The Second Amendment "protects an individual right to possess firearms," *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008), a right the Court has described as basic to one's "inherent right to self-defense" and "fundamental to our scheme of ordered liberty," *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010). In evaluating the constitutionality of firearm regulations under the amendment, the Court applies a two-step test. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2127 (2022). Step one asks whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2129. If it does, "the Constitution presumptively protects that conduct," at which the Court turns to the second step, where the burden falls on the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Id.*

1

at 2126, 2130, 2137. If the government fails to carry this burden, the challenged regulation is unconstitutional. *Id.* at 2130.

Under this rationale, Section 922(g)(1) cannot stand constitutional scrutiny. The right to "keep and bear Arms" includes within it the right to possess a firearm. Nonetheless, Mr. Harper is charged for that same action—possessing a firearm. Under ***Bruen***, the Second Amendment protects this conduct thereby requiring the government to "affirmatively prove" that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126, 2127. However, the government cannot establish this and therefore meet their burden. Consequently, in light ***Bruen***, this Honorable Court must declare §922(g)(1) unconstitutional and dismiss the indictment against Mr. Harper.

Section 922(g)(1) fails both steps of the ***Bruen*** analysis. Subject to limited exception, not applicable here, that section forever deprives a person previously convicted of "a crime punishable by imprisonment for a term exceeding one year" from ever again exercising their core, fundamental right to possess a firearm. 18 U.S.C. § 922(g)(1). Any person who violates this complete and permanent firearm ban commits a federal crime, a felony punishable by up to ten years' imprisonment, a $250,000 fine, or both. Id. §§ 924(a)(4), 3571(b)(3). There is no "well-established and representative historical analogue," ***Bruen***, 142 S. Ct. at 2133, for this regulation. There are a wide range of charges in our criminal justice system, most of which are non-violent offenses, that would qualify as predicate offenses prohibiting such persons from exercising their fundamental constitutional right to bear arms.

2

I.        **The plain text of the Second Amendment covers Mr. Harper's actions.**

First, the court must determine whether Mr. Harper's actions are covered by the plain text of the Second Amendment. As mentioned above, the text of the Second Amendment protects "the right of the people to keep and bear Arms." U.S. Const. amend. II.

The term "the people" has been interpreted clearly by prior case law. The phrase "the people" is used multiple times in the Bill of Rights and has been interpreted by the Court as having a consistent meaning, "refer[ring] to a class of persons who are part of the national community or who have otherwise developed sufficient connections with this country to be considered part of that community." *Heller*, 554 U.S. at 580 (*quoting United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990)). This interpretation accords with the plain meaning of the word "people" at the time the Bill of Rights was adopted, defined as "[t]he body of persons who compose a community, town, city, or nation"—a term "comprehend[ing] all classes of inhabitants." II Noah Webster, An American Dictionary of the English Language (1828). Consistent with these principals, the Court has held "the people" in the Second Amendment "unambiguously refers" to "all Americans" and "all members of the political community" and "not an unspecified subset." *Heller*, 554 U.S. at 579-80.

Mr. Harper is part of the national community. A united citizen born in the United States of America and part of its community. The term "of the people" does not delineate specific subsets of people and therefore his status as a felon does not exclude him as a person "of the people." *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (describing felons as "indisputably part of 'the people'" under the Second Amendment); *United States v. Meza-Rodriguez*, 798 F.3d 664, 671 (7th Cir. 2015) (holding that a person's "criminal record" is irrelevant in determining whether the person is among "the people" protected under the Second

Amendment, noting that the amendment "is not limited to such on-again, off-again protections."); *Folajtar v. Attorney Gen. of the United States*, 980 F.3d 897, 912 (3d Cir. 2020) (Bibas, J., dissenting) ("Felons are more than the wrongs they have done. They are people and citizens who are part of "We the People of the United States.'").

The phrase "to keep and bear" and is plainly defined as possession. The word "keep" means "[t]o have in custody" or to "retain in one's power of possession." *Heller*, 554 U.S. at 582. The word "bear" means "to carry." *Id.* at 584 (internal quotation marks omitted). Both verbs have been held as protecting the "right to possess firearms." *Id.* at 576. In the case at hand, Mr. Harper is being charged with possessing a firearm.

Next, the term "arms" refers to "[w]eapons of offense, or armour of defense." *Id.* at 581. The Court has construed the term as "extend[ing]… to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582. Indeed, the Court has specifically held that the term protects the right to possess handguns. *Id.* at 629. Mr. Harper is being charges with possessing a Berretta semiautomatic pistol and therefore qualifies as "arms" under the Second Amendment.

## II.    The Government cannot prove that Section 922 is consistent with the Nation's historical traditions of firearms regulations.

As the first step of the process is met, the second step requires the government to justify §922(g)(1) "by demonstrating that [§ 922(g)(1)] is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

In conducting this inquiry, the Court emphasized the importance and difficulties of the government's burden, "whether modern and historical regulations impose a comparable burden

on the right of armed self-defense and whether that burden is comparably justified are "'central'"

considerations when engaging in an analogical inquiry." *Id.* at 2133.

The means by which a regulation is enforced is a crucial factor when comparing how two

regulations "burden [one's] right to armed self-defense." *Id.* at 2133. Historical firearms

regulations enforced via a "small fine," "bond," "forfeiture," or other nonpunitive measures are

poor analogues for modern firearm regulations carrying "significant criminal penalties." *Id.* at

2149 (*quoting Heller*, 554 U.S. at 633-34). This same reasoning applies when considering a

regulation's scope. Historical practices imposing conditions or restrictions on one's right to keep

and bear arms provide no precedent for a "flat ban" on that right. *See Id.* at 2131. A tradition of

regulation requires a historical practice so "well-established" and "widespread" that a court can

say with confidence that the regulated conduct falls outside of "the pre-existing right codified in

the Second Amendment." *Id.* at 2133, 2137, 2135.

In weighing historical evidence, courts must take careful account of the relevant time

frame. Under *Bruen*, "when it comes to interpreting the Constitution, not all history is created

equal." *.Id.* at 2135. "Constitutional rights are enshrined with the scope they were understood to

have when the people adopted them," which in the case of the Second Amendment was in 1791.

*Id.* at 2136 (*quoting Heller*, 554 U.S. at 634-45) (emphasis in original). While the government

must carry their burden in this position, it is important to note "no colonial or state law in

eighteenth century America formally restricted"—much less prohibited, permanently and under

pain of criminal punishment—"the ability of felons to own firearms." Carlton F.W. Larson, Four

Exceptions in Search of a Theory: District of Columbia v. Heller and Judicial Ipse Dixit, 60

Hastings L.J. 1371, 1374 (2009). In Judge Bibas's dissent in *Folajtar v. Attorney Gen. of the*

*United States*, 980 F.3d 897 (3d Cir. 2020), he remarked: "Little evidence from the founding

supports a near-blanket ban for all felons. I cannot find, and the majority does not cite, any case or statute from that era that imposed or authorized such bans." Furthermore, he explained "the colonists recognized no permanent underclass of ex-cons. They did not brand felons as forever 'unvirtuous,' but forgave. We must keep that history in mind when we read the Second Amendment. It does not exclude felons as an untouchable caste." ***Id.*** Furthermore, Judge Hardiman, concurring in ***Binderup v. Attorney Gen. United States of Am***., 836 F.3d 336 (3d. Cir. 2016) noted that "dispossessory regulations … were few and far between in the first century of our Republic." ***Id.*** at 368 (Hardiman, J., concurring). Indeed, "the Founding generation had no laws denying the right to keep and bear arms to people convicted of crimes." ***Id.***

The first modern ban on possession of firearm from those convicted or certain crimes arose in 1961 when Congress amended the Federal Firearms Act of 1938. An act taken without historic analysis does not pass constitutional muster. The modern change to the law does not reflect the insight nor meaning of the Second Amendment at its original inception nearly 200 years before it.

The mere fact that Mr. Harper is alleged to have given up his rights to possess a firearm merely because of his status as a felon does not comport with the intent and position of the United States Constitution. If a person loses their constitutional rights under the Second Amendment merely based on their conviction, why do they not lose their rights to other fundamental protections under the Bill of Rights? It can hardly be argued that a person who is a felon similarly loses their right to free speech, to assemble or to religion. ***See*** U.S. Const. amend. I. He still maintains his right to security within his "person, house, papers, and effects, against unreasonable searches and seizures." ***See*** U.S. Const. amend. IV.  So too, a person should not lose their constitutional rights to bear arms.

## II.      CONCLUSION

The Second Amendment highlights fundamental and indispensable rights that all citizens are entitled to. A modern adaptation of this right to discount an entire subset of citizens does not comport with clear language and intent of the Second Amendment at its inception. There are a multitude of ways that a person can become a felon under our criminal justice system. There is no individualized reasoning for this wide net of exclusion. Furthermore, there is no other way in which an individual's fundamental rights are permanently deprived under any other constitutional amendment. Therefore, the Court should deem §922(g)(1) unconstitutional and dismiss the indictment against Mr. Harper.

Dated:  November 17, 2022

**DETHLEFS-PYKOSH LAW GROUP, LLC**
/s/ Jonathan R. White_____
Jonathan R. White, Esquire
PA ID No. 313808
2132 Market Street
Camp Hill, PA 17011
(717) 975-9446
jwhite@dplglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on I served a true and correct copy of the forgoing documents in this proceeding via electronic filing upon the following:

John C. Baer, Esquire
Office of the US Attorney
228 Walnut Street, Suite 220
PO Box 11754
Harrisburg, PA 17108-1754

Dated:  November 17, 2022                    /s/ Jonathan R. White_____
                                             Jonathan R. White, Esquire
                                             PA ID No. 313808
                                             2132 Market Street
                                             Camp Hill, PA 17011
                                             (717) 975-9446
                                             jwhite@dplglaw.com
                                             *Attorney for Defendant*